IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HEE JIN LOWERY, et al.,

Plaintiffs,

v.

AMGUARD INSURANCE COMPANY,

Defendant.

CIVIL ACTION FILE
NO. 1:20-CV-5148-TWT

## OPINION AND ORDER

This is a breach of contract action arising out of an insurance coverage dispute. It is before the Court on the Plaintiffs' Motion for Partial Summary Judgment [Doc. 82] and the Defendant's Motion for Summary Judgment [Doc. 83]. For the reasons set forth below, the Plaintiffs' Motion for Partial Summary Judgment [Doc. 82] is GRANTED, and the Defendant's Motion for Summary Judgment [Doc. 83] is DENIED.

### I.   Background[1]

On July 26, 2017, Plaintiff Hee Jin Lowery ordered a bowl of hot soup from Noodle, a restaurant in College Park, and sustained severe burns when the hot soup spilled through its packaging onto her lap. (Def.'s Statement of

---

[1] The operative facts on the Motions for Summary Judgment are taken from the parties' Statements of Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

Undisputed Material Facts ¶ 18.) On July 19, 2019, the Plaintiffs, Hee Jin and John Lowery, sued Shou & Shou, Inc. ("Shou & Shou"), the owner-operator of the College Park restaurant, in DeKalb County State Court for damages arising from Mrs. Lowery's injuries. (*Id.* ¶¶ 3, 19.) Upon being served, Shou & Shou tendered the suit to the Defendant, AmGuard Insurance Company ("AmGuard"), for legal defense and indemnification. (*Id.* ¶ 19.) AmGuard denied Shou & Shou's claim, however, on the ground that it was not insured under the applicable policy—Policy No. NOBP749206 ("Policy"), a general businessowners insurance policy in effect from September 21, 2016, until September 21, 2017. (*Id.* ¶¶ 9, 16, 20). The policy was originally issued in 2013. (*Id.* ¶ 2.)

The Declarations page of the Policy identifies the insured as "Noodle Inc," located at 3693 Main Street, College Park, Georgia 30337. (*Id.* ¶¶ 2, 16.) The Policy also lists the two locations where Ms. Lina Shou Kuo and her two siblings, Lenny Shou and Lili Shou (collectively, "the Shous" or "the Shou siblings"), were operating restaurants in 2017, including 3693 Main Street ("Noodle College Park") and 903A West Peachtree Street ("Noodle Midtown") (collectively, "the Noodle restaurants"). (*Id.* ¶ 2.) While Shou & Shou owns and operates Noodle College Park, an entity called Noodle Life, Inc. ("Noodle Life") owned and operated Noodle Midtown, prior to its sale in December 2017. (*Id.* ¶¶ 2–4; Pls.' Resp. to Def.'s Statement of Undisputed Material Facts ¶ 4.) The Shou siblings jointly own both Shou & Shou and Noodle Life. (Def.'s Statement

of Undisputed Material Facts ¶ 1.) After the Shous sold Noodle Midtown in 2017, the insured on the Policy remained Noodle, Inc., and Noodle College Park was the sole location that continued to be listed on the Policy. (*Compare* Pls.' Mot. for Partial Summ. J., Ex. 1, at 39–42, *with id.* at 46–48.) At all times, Shou & Shou paid the Policy's premiums from its operating account. (Pls.' Statement of Undisputed Material Facts ¶ 9.)

The Plaintiffs claim that "Noodle" is a tradename of Shou & Shou and the other Noodle restaurants but that the Shous never had any ownership interest in a corporation called Noodle, Inc. (*Id.* ¶ 7.) AmGuard disputes this assertion, stating that "Route 29 Cafe" is the tradename of Shou & Shou. (Def.'s Resp. to Pls.' Statement of Undisputed Material Facts ¶ 7.)

Relatedly, in 2013, AmGuard issued a workers compensation policy to the Shous for coverage of the Noodle restaurants under the insured name Noodle, Inc. (Pls.' Statement of Undisputed Material Facts ¶¶ 3, 6.) After AmGuard conducted a payroll audit of the Noodle restaurants in 2014 and incidentally determined that Shou & Shou was a proper insured entity, the workers compensation policy was later amended to include Shou & Shou as an insured. (*Id.* ¶¶ 10, 13.)

In addition, the Plaintiffs claim that two prior lawsuits arising from injuries that restaurant patrons sustained at Noodle College Park, referred to as the *Addus* lawsuit and the *Love* lawsuit, support their causes of action. (*Id.* ¶¶ 16–21, 23–28.) In the *Addus* lawsuit, AmGuard authorized its defense

3

counsel to substitute Shou & Shou as the proper insured party under the Policy because Shou & Shou owned and operated Noodle College Park, where the incident occurred. (*Id.* ¶¶ 19–20.) In the *Love* lawsuit, AmGuard prepared a defense on behalf of Shou & Shou after defense counsel informed AmGuard that Shou & Shou's "dba" was Noodle, Inc. and that it owned Noodle College Park, also where the incident occurred. (*Id.* ¶¶ 26–27.) AmGuard eventually settled the *Addus* and *Love* lawsuits and obtained releases in favor of Shou & Shou in both cases. (*Id.* ¶ 28.) AmGuard also later considered the *Addus* and *Love* lawsuits that it handled for Shou & Shou in evaluating the Policy's renewal and premium increase. (*Id.* ¶ 33.)

Ultimately, after AmGuard denied coverage to Shou & Shou in the Lowerys' DeKalb County lawsuit, Shou & Shou defended itself in the case and entered into a settlement agreement with the Plaintiffs.[2] (*Id.* ¶ 34.) In the settlement agreement, Shou & Shou accepted a consent judgment that assigned its claims against AmGuard to the Plaintiffs. (*Id.*) Pursuant to Shou & Shou's assignment of its claims, the Plaintiffs brought this action against AmGuard for equitable reformation (Count I), breach of contract (Count II), and bad faith under O.C.G.A. § 33-4-6 (Count III). (Am. Compl., at 10, 12, 14.) In its Answer, the Defendant AmGuard brought a counterclaim against the

---

[2] The Court acknowledges that both the DeKalb County State Court and the Georgia Court of Appeals held that the Lowerys could not recover from Noodle Life in the underlying lawsuit on theories of joint venture, alter ego, and/or agency. (Def.'s Mot. for Summ. J., Ex. 1.)

Plaintiffs, seeking a declaratory judgment holding that it has no obligation to defend or indemnify Shou & Shou and that the Plaintiffs have no rights as assignees or judgment creditors of Shou & Shou. (Answer, at 27–28.)

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.    Discussion

The Plaintiffs move for partial summary judgment as to their claims for equitable reformation and breach of contract and as to AmGuard's counterclaim seeking a declaratory judgment. (Pls.' Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 20–21.) AmGuard moves for summary judgment as to the Plaintiffs' claims for equitable reformation, breach of contract, and bad faith. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 1–2.) The Court first

addresses the Plaintiffs' three causes of action and then addresses AmGuard's counterclaim.

## A. Equitable Reformation

The Plaintiffs claim that they are entitled to equitable reformation of the Policy on the ground of mutual mistake. (Pls.' Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 9–16.) AmGuard argues that the Plaintiffs cannot establish mutual mistake because the evidence they offer is insufficient and any mistake was solely due to the negligence of Shou & Shou or its insurance agent. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 10–17.)

Reformation is a remedy that seeks to "do equity" among interested parties by reforming a contract to reflect the parties' true intent. *Cherokee Nat. Life Ins. Co. v. Coastal Bank of Ga.*, 239 Ga. 800, 803 (1977); *Cotton States Mut. Ins. Co. v. Woodruff*, 215 Ga. App. 511, 511 (1994). Georgia law recognizes mutual mistake as a ground for equitable reformation. *Occidental Fire & Cas. of N.C. v. Goodman*, 339 Ga. App. 427, 429 (2016). The Georgia Court of Appeals has explained the standard as follows:

> The term "mistake" refers to some unintentional act, or omission, or error, arising from ignorance, surprise, imposition, or misplaced confidence. Such a mistake may be one of fact or of law. A "mutual mistake" means a mistake shared by, or participated in by, both parties, or a mistake common to both parties, or reciprocal to both parties; both must have labored under the same misconception in respect of the terms and conditions of a written instrument, intending at the time of the execution of the instrument to say one thing and by mistake expressing another, so that the instrument as written does not express the contract or intent of either of the parties.

6

*Ledford v. Smith*, 274 Ga. App. 714, 726–27 (2005) (internal punctuation, quotation marks, and citations omitted).

The Plaintiffs and AmGuard both present a wide array of evidence and arguments in support of their positions in favor of and against reformation, respectively. The Court begins by first addressing the Plaintiffs' primary reliance on *Occidental*, 339 Ga. App. at 429, and then turns to arguments of both the Plaintiffs and AmGuard regarding the *Addus* and *Love* lawsuits, the workers compensation policy amendment, the Shous' alleged negligence in renewing the Policy under the insured name Noodle, Inc., and any prejudice to AmGuard that would result from reformation.

### 1. The Plaintiffs' Reliance on *Occidental*

The Plaintiffs rely on *Occidental* in support of their argument regarding mutual mistake. (Pls.' Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 11–13.) In *Occidental*, R&R Spirits of Atlanta, LLC ("R&R") contracted with Irish Bred Pub & Grill V, Inc. to purchase all assets and interests in a bar and restaurant called Irish Bred Pub & Grill. *Occidental*, 339 Ga. App. at 427. When R&R applied for a commercial insurance policy with Occidental to cover its new restaurant, the application listed Irish Bred Pub & Grill V, Inc. and Irish Bred Pub & Grill as the insureds, but not R&R. *Id.* at 427–28. After the plaintiffs' decedent was fatally stabbed outside the restaurant, the plaintiffs sued R&R for wrongful death. *Id.* at 428. Thereafter, R&R requested that

7

Occidental provide its defense pursuant to the insurance policy, but Occidental denied coverage and refused to provide a defense on the ground that R&R was not listed as an insured under the policy. *Id.* The plaintiffs and R&R ultimately reached a settlement, which included the assignment of R&R's rights against Occidental under the insurance policy. *Id.* The plaintiffs then sued Occidental on theories of equitable reformation and breach of contract, claiming that R&R and Occidental mutually mistook the former restaurant owner as the insured under the policy, rather than R&R. *Id.*

The Georgia Court of Appeals affirmed the trial court's grant of summary judgment in favor of the plaintiffs on their equitable reformation and breach of contract claims. *Id.* at 430. The court reasoned that R&R and Occidental operated under the same misconception that R&R d/b/a Irish Bred Pub & Grill was the insured under the insurance policy, rather than the prior corporate owner. *Id.* at 429. In addition, Occidental did not present evidence creating a genuine issue of material fact as to whether R&R or Occidental would have intended for the policy to cover the prior owner, who no longer had any interest in the restaurant, rather than R&R—the actual current owner. *Id.* Under those circumstances, the court found that the mistake was common to both R&R and Occidental and that their clear intent was to provide coverage for the new restaurant owner, R&R, and not the prior owner. *Id.*

Here, the Plaintiffs contend that listing Noodle, Inc. as the insured on the Policy constituted a mutual mistake justifying reformation because Noodle,

Inc. was a fictitious entity with no insurable interest in Noodle College Park and was merely a reference to Shou & Shou's tradename. (Pls.' Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 12, 16.) Absent an insurable interest, they argue, AmGuard would be entitled to a windfall because they would have collected premiums on a policy insuring no one. (*Id.* at 13 (citing *Arctic Polar, LLC v. Allstate Ins. Co.*, 2010 WL 11493758, at *3 (N.D. Ga. Feb. 25, 2010)).)

In response, AmGuard argues that *Occidental* is distinguishable on the facts because the Policy here "was not issued to a *prior owner* who had *no interest* in the businesses being insured" but rather the Policy provided coverage to Noodle Life, which owned Noodle Midtown and provided limited food preparation services to Noodle College Park. (Def.'s Br. in Opp'n to Pls.' Mot. for Partial Summ. J., at 19.) The Plaintiffs contend in reply that the undisputed evidence and the testimony of AmGuard's witnesses show that Noodle Life was not an insured under the Policy. (Pls.' Reply Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 5.) They also note that their argument is further bolstered by the fact that AmGuard renewed the Policy under the insured name Noodle, Inc. even after the Shous sold Noodle Midtown in December 2017. (*Id.* at 6.)

The Court finds that the reasoning in *Occidental* on mutual mistake extends to the present case. Specifically, the Court agrees with the Plaintiffs that AmGuard has pointed to no evidence creating a genuine issue of material fact as to why the Shous and AmGuard would have intended for the Policy to

cover a non-existent business entity (Noodle, Inc.) rather than the actual owner-operator of Noodle College Park (Shou & Shou). (Pls.' Reply Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 3); *see also Occidental*, 339 Ga. App. at 429. AmGuard's primary argument against this finding is that the Shous and AmGuard intended for the Policy to cover Noodle Life. (Def.'s Br. in Opp'n to Pls.' Mot. for Partial Summ. J., at 19.)

Whether the Shous and AmGuard intended for the Policy to cover all business entities that owned and operated the Noodle restaurants, or just Noodle Life alone, is material to the issue of mutual mistake. If their intent was to insure only Noodle Life, equitable reformation is inappropriate; if their intent was to insure all entities that owned and operated Noodle restaurants, however, then equitable reformation to include Shou & Shou as an insured may be appropriate. The Court addresses these preliminary issues in turn.

### a. Did the Shous and AmGuard Intend for the Policy to Cover Noodle Life Alone?

The Parties do not dispute that Noodle, Inc., and not Noodle Life, was the only insured named under the Policy. (Pls.' Mot. for Partial Summ. J., Ex. 1, at 32.) The Plaintiffs claim that even though the Policy named Noodle, Inc. as the insured, the Shous siblings never had any ownership interest in a corporation by that name and that the name merely referenced the tradename of Shou & Shou and the other Noodle restaurants listed on the Policy. (Pls.' Statement of Undisputed Material Facts ¶ 7; Kuo Aff. ¶¶ 6–7.) AmGuard

disputes the Plaintiffs' statement of material fact on the ground that certain evidence in the record identifies "Route 29 Cafe" as the tradename of Shou & Shou. (Def.'s Resp. to Pls.' Statement of Undisputed Material Facts ¶ 7; Smith Dep., at 243–44.)

The Court finds that AmGuard has not presented a genuine issue of disputed material fact on this issue. The Plaintiffs and AmGuard present evidence on two distinct tradenames. First, the Plaintiffs claim that all Noodle restaurants operated under the general tradename Noodle. (Pls.' Statement of Undisputed Material Facts ¶ 1.) And second, AmGuard claims that the tradename of Shou & Shou was in fact Route 29 Cafe. (Def.'s Resp. to Pls.' Statement of Undisputed Material Facts ¶ 7.) The Court finds nothing in the record suggesting that these tradenames must be mutually exclusive. Shou & Shou may have been validly doing business as Route 29 Cafe while still being part of a restaurant group known by the tradename Noodle. Indeed, Noodle College Park is located on Route 29 (Main Street) in College Park. Regardless of Shou & Shou's tradename, the Court also finds nothing in the record indicating that the Policy intended to insure Noodle Life alone. In fact, the Plaintiffs cite to multiple AmGuard witnesses that expressly testified to the contrary. (Pls.' Reply Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 5; Gates Dep., at 27; Marcincavage Dep., at 81–82.) Accordingly, the Court finds that the Shous and AmGuard did not intend for the Policy to solely cover Noodle Life.

> **b.  Did the Shous and AmGuard Intend for the Policy to Cover Shou & Shou?**

Having found that the Shous and AmGuard did not intend for the Policy to cover Noodle Life alone, the question remains as to what business entities the Shous and AmGuard intended for the Policy to cover and whether such entities included Shou & Shou. AmGuard attempts to distinguish *Occidental* arguing that even if the Policy could be reformed to replace Noodle, Inc. as the insured, the record is unclear as to whether the parties intended to insure Shou & Shou, Noodle Life, or a combination thereof. (Def.'s Br. in Opp'n to Pls.' Mot. for Partial Summ. J., at 20.) Nonetheless, the Court finds that the Shous and AmGuard intended for the Policy to cover Shou & Shou and its insurable interest in Noodle College Park.

To begin with, the address listed underneath Noodle, Inc. in the Policy is the address of Noodle College Park. (Pls.' Mot. for Partial Summ. J., Ex. 1, at 32.) In addition, the Policy lists the address of Noodle College Park as Location 001 to be covered under the Policy. (*Id.* at 33.) The Court also finds persuasive that the insured on the Policy remained Noodle, Inc. even after the Shous sold Noodle Midtown in 2017, further supporting that the Shous and AmGuard intended for the Policy to cover Shou & Shou d/b/a Noodle College Park. (*Compare id.* at 39–42, *with id.* at 46–48.) Moreover, the Parties do not dispute that Shou & Shou has paid the premiums for the Policy from its operating account since the Policy's inception. (Pls.' Statement of Undisputed

12

Material Facts ¶ 9.) Finally, and perhaps most persuasively, the Policy as written covering Noodle, Inc. appears to insure no one, which further substantiates the mutual mistake of the Shous and AmGuard. *See Arctic Polar*, 2010 WL 11493758, at *3. In sum, all of these undisputed facts point to the conclusion that the Shous and AmGuard operated under the same misconception regarding Noodle, Inc. and intended instead for the Policy to cover Shou & Shou, which supports reformation of the named insured under the Policy in this case, as was the case in *Occidental*.

### 2. Past Claims at Noodle College Park

The Plaintiffs and AmGuard also allude to past conduct in several other instances to support their respective claims for summary judgment. Those instances include two cases where AmGuard defended claims that arose out of injuries that occurred at Noodle College Park and the amendment of the Noodle restaurants' workers compensation policy to better reflect the corporate structure of the Noodle restaurants owned by the Shou siblings.

The Plaintiffs cite to two instances—the *Addus* and *Love* lawsuits— where AmGuard defended prior claims against Shou & Shou for injuries sustained by patrons at Noodle College Park, as evidence supporting the mutual mistake in failing to name Shou & Shou as an insured under the Policy. (Pls.' Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 5–7, 13–14.) They argue that those prior defenses provide clear, unequivocal, and decisive evidence of mutual mistake as a matter of law. (*Id.* at 10–11, 13 (citing *Ga. Farm Bureau*

13

*Mut. Ins. Co. v. Wall*, 242 Ga. 176, 178 (1978), and *Fox v. Washburn*, 264 Ga.
617, 618 (1994)).) AmGuard contends that Georgia precedent precludes
consideration of prior acts in a reformation claim. (Def.'s Br. in Supp. of Def.'s
Mot. for Summ. J., at 10 (citing *Washington v. Hartford Acc. & Indem. Co.*, 161
Ga. App. 431, 432 (1982)).)

Contrary to AmGuard's arguments, and as the Court set forth in its
Order denying judgment on the pleadings, the past actions of parties to a
contract can support a claim of mutual mistake because those actions are
indicative of the parties' contractual intent. (Order Den. Def.'s Am. Mot. for J.
on the Pleadings, at 7); *Fox*, 264 Ga. at 618 ("[The plaintiff]'s allegation,
together with the actual conduct of both parties over a period of eight years,
presents questions as to the intent of the parties in entering into the agreement
. . . .").[3] AmGuard argues that for third-party liability claims where damages
are minimal, it might resolve a claim without performing a coverage evaluation
by paying defense costs and/or settling the dispute on behalf of a non-insured
party to resolve the claim efficiently. (Def.'s Br. in Supp. of Def.'s Mot. for
Summ. J., at 19 (citing Gates Decl., at 2).) AmGuard further claims that
nothing in the record suggests that it performed coverage evaluations for the

---

[3] AmGuard also argues that the Policy is a renewal of the original
businessowners policy issued in 2013 and, therefore, the intent relevant to the
inquiry is that of the Shous and AmGuard at the time the original Policy was
issued. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 11–12.) Because
consideration of the parties' conduct after entering into the agreement is
appropriate, the Court finds this argument unpersuasive.

two settled lawsuits. (*Id.*) The Plaintiffs respond by citing the two litigation reports prepared by AmGuard's defense counsel that treated Shou & Shou as the insured under the tradename Noodle, Inc. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 12; Pls.' Mot. for Partial Summ. J., Exs. 4, 6.)

The Court finds that these litigation reports substantiate that AmGuard treated Shou & Shou as its insured under the Policy in both prior instances and that AmGuard therefore operated under the same mistaken assumption that Shou & Shou was the insured under the Policy. An email from defense counsel in the *Addus* lawsuit even shows that AmGuard specifically authorized the substitution of Noodle Life for Shou & Shou, where the complaint named the former but not the latter as a defendant. (Pls.' Mot. for Partial Summ. J., Ex. 3, at 3.) This finding is further strengthened by the fact that AmGuard took into account the prior claims it had handled for Shou & Shou in evaluating the renewal assessment and corresponding premium increase for Noodle, Inc. under the Policy. (Pls.' Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 8 (citing McAndrew Dep., at 53–61).)

Regarding the *Addus* and *Love* lawsuits, AmGuard makes several additional arguments that also fail. First, AmGuard argues that it may resolve claims as part of a business decision without expanding the scope of a policy's coverage. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 18 (citing *Lightning v. Conseco Life Ins. Co.*, 2008 WL 11335090, at *3 (N.D. Ga. Aug. 8, 2008) (citation omitted) (finding a life insurance company did not waive any of its

15

contractual rights by offering the insured an additional thirty days to pay its delinquent premium)).) The *Lightning* case that AmGuard cites for this proposition is distinguishable from the present case. Here, the Plaintiffs' theory of relief is premised not upon AmGuard's waiver of any contractual right but rather upon mutual mistake as to the insured under the Policy. Further, AmGuard does not actually claim that it resolved either of the two lawsuits that it defended on behalf of Shou & Shou under the Policy because of a specific business decision, nor does AmGuard point to evidence indicating as much. Thus, the Court finds this argument unpersuasive.

In addition, AmGuard argues that evidence beyond the express terms of the Policy's unambiguous language in this case is inadmissible parol evidence. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 18 (citing *W.L. Petrey Wholesale Co. v. Great Am. Ins. Co.*, 622 F. App'x 849, 853 (11th Cir. 2015)).) The present issue, however, is one not of ambiguity of language but one of contractual intent and mutual mistake. The Court agrees with the Plaintiffs that parol evidence is admissible to show mutual mistake in a claim for reformation. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 2–3 (citing *Zaimis v. Sharis*, 275 Ga. 532, 533 (2002) (finding that the trial court properly considered parol evidence that was probative of mutual mistake to show the parties' contractual intent in a reformation case)).) The Plaintiffs offer evidence of AmGuard's prior defenses of Shou & Shou not to contradict unambiguous language but rather to show the intent of the parties to the contract. Thus,

consideration of the parol evidence here is appropriate, and the *Addus* and *Love* lawsuits support a finding of mutual mistake.

### 3. Workers Compensation Policy

Next, the Plaintiffs contend that an AmGuard payroll audit for the workers compensation policy issued to Noodle, Inc. and the subsequent revelation of the true corporate entities owned by the Shous also support a finding of mutual mistake. (Pls.' Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 14–15.) AmGuard argues in response that a workers compensation policy is "a completely different line of insurance" from a businessowners policy and that the amendment of the workers compensation policy itself is evidence of the Plaintiffs' error in failing to seek revision of the Policy.[4] (Def.'s Br. in Opp'n to Pls.' Mot. for Partial Summ. J., at 16–18.) The Plaintiffs cite to evidence that AmGuard was in fact supposed to correct all of the Noodle restaurants' policies, not just the workers compensation policy, and argue that the difference in the line of insurance is inconsequential because both policies included the same mutual mistake of the named insured. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 5 (citing Smith Dep., at 69, 72, 75); Pls.' Reply Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 8.)

Because the amendment of the workers compensation policy is indicative of the Shous and AmGuard's contractual intent, the amendment also

---

[4] The Court addresses the issue of the Shous' alleged negligence in Section III.A.4 below.

supports a finding that the Shous and AmGuard operated under a mutual mistake by naming Noodle, Inc. as the insured under the Policy. Particularly compelling on this issue is the 30(b)(6) deposition testimony of Al Marcincavage, who substantiated that the Shous and AmGuard clearly intended to cover the additional entities (Shou & Shou and Noodle Life) under the workers compensation policy. (Marcincavage Dep., at 40, 43.) That clear intention extends to the similar circumstance of the named insured under the businessowners Policy at issue here.

Though the Shous indeed had a duty to examine the Policy to determine whether their requested coverage was procured, *see Lee v. Am. Cent. Ins. Co.*, 241 Ga. App. 650, 652 (1999), their failure to do so at most suggests that they were negligent in renewing the businessowners policies after AmGuard corrected the workers compensation policy. Resolution of the present motions will thus depend on whether the Shous' alleged negligence precludes a finding of summary judgment.[5]

### 4.  Negligence and Prejudice

Finally, the Plaintiffs argue that even if the Shous were negligent in their belief that the Policy covered Shou & Shou as an insured, reformation is

---

[5] The Court proceeds under the assumption that the Shous were negligent and therefore finds that it need not resolve the dispute of whether the Shous' insurance agent directed AmGuard to correct the businessowners Policy in addition to the workers compensation policy. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 5; Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 3.)

18

still appropriate because allowing AmGuard to collect premiums for Noodle, Inc. while denying coverage to Shou & Shou "would not prejudice AmGuard but provide it a windfall." (Pls.' Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 16.) AmGuard argues in response that it would be prejudiced by reformation because the Policy was intended to insure only one business entity and that it would have charged a higher premium to cover multiple business entities. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 15–16; Def.'s Br. in Opp'n to Pls.' Mot. for Partial Summ. J., at 10–11.)

The Court need not resolve whether the Shous were negligent in failing to amend the Policy to cover Shou & Shou because, even if they were, no prejudice to AmGuard will result from reformation.[6] The Court finds that *Occidental* and *Arctic Polar* are controlling here. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 8–10 (citing *Occidental*, 339 Ga. App. at 430, and *Arctic Polar*, 2010 WL 11493758, at *3).) AmGuard does not dispute that the Shous incorrectly identified Noodle, Inc. as the insured on the Policy, (*see* Def.'s Statement of Undisputed Material Facts ¶ 9), nor does AmGuard provide any evidence or argument suggesting that Noodle, Inc. is an actual corporate entity with an insurable interest. Further, and most tellingly, AmGuard did not even argue that Noodle Life was the actual insured under the Policy until its

---

[6] For this reason, among others, the Court finds that AmGuard's Expert Report does not present a genuine dispute of material fact to the issue of mutual mistake. (Def.'s Mot. for Summ. J., Ex. 9, at 4–6.)

Response Brief in Opposition to the Plaintiffs' Motion for Partial Summary Judgment. Such an omission from its own Motion for Summary Judgment leads the Court to conclude that, "under [AmGuard's] view, it was entitled to collect and retain the premiums on [the Policy] that it knew or should have known provided no coverage whatsoever." *Arctic Polar*, 2010 WL 11493758, at *3. Under the circumstances, reformation is appropriate to avoid an "unbargained-for windfall." *Id.*

AmGuard's argument regarding prejudice and its intent to insure one single business entity is unpersuasive. In its briefing, AmGuard contends that it would be prejudiced by reformation because the Policy's premium reflected and accounted for only the risks commensurate with insuring a single business entity. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 15–16 (citing Marcincavage Decl. ¶¶ 6–7).) Adding Shou & Shou as an insured to the Policy, AmGuard argues, would expand coverage to multiple business entities, for which AmGuard would have charged a higher premium. *Id.* The Plaintiffs take issue with the "conclusory fashion" and the lack of factual support accompanying the evidence upon which AmGuard relies for its argument—the Declaration of Al Marcincavage, AmGuard's Underwriting Specialist. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 9–10.) They further respond that they are not asking the Court to extend coverage to multiple entities but rather to reform the Policy to cover just Shou & Shou. *Id.* In reply, AmGuard reasons that the Plaintiffs' proposed reformation would logically require the Court to

20

reform the Policy to cover not only Shou & Shou but also Noodle Life. (Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 9 (citing Marcincavage Decl. ¶¶ 6–7).) Such a reformation "alone is prejudicial," AmGuard argues, "as AmGuard would be insuring [two] separate entities for the price of one." *Id.*

To begin with, the Plaintiffs seek to substitute Shou & Shou as the insured under the Policy for Noodle, Inc., so the proposed reformation does not change the number of insured business entities under the Policy. But even if the Plaintiffs sought reformation to insure Shou & Shou and Noodle Life under the Policy, such a reformation would be consistent with the evidence presented in this case.[7],[8] The only evidence that AmGuard cites for its proposition

---

[7] Perhaps the best evidence in support of this conclusion is the fact that the workers compensation policy was amended after the payroll audit to include all entities owned by the Shou siblings that were operating Noodle restaurants. (Pls.' Statement of Undisputed Material Facts ¶ 12; Marcincavage Dep., at 40–41.) Ms. Lena Shou Kuo indeed affirmed that it was her intention and understanding that Shou & Shou, along with the other business entities owning and operating Noodle restaurants (including Noodle Life), would be covered under the Policy. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 12 (citing Kuo Aff. ¶ 18).) AmGuard disputes this assertion, arguing that it is unclear, based on the record, who the Shous intended for the Policy to cover because they never requested that Shou & Shou be listed as an insured on the Policy. (Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 7.) The Court has already assumed, however, that the Plaintiffs were negligent in their failure to request that Shou & Shou be listed as an insured on the Policy, and the Court disagrees with AmGuard's conclusion that the record is unclear as to who the Shous intended for the Policy to cover. Viewed in the light most favorable to AmGuard, all evidence in the record points to the conclusion that the Shous and AmGuard intended for the Policy to cover Shou & Shou and Noodle Life.

[8] In its effort to distinguish *Occidental*, AmGuard also argues that the party seeking reformation (Shou & Shou) has a relationship with the party that AmGuard alleges is the true policyholder (Noodle Life), unlike the buyer

regarding prejudice is the Declaration of Al Marcincavage, who declares, without providing any facts or reasons supporting his conclusion, that "[t]he premiums charged by AmGuard for the [Policy] reflect and account for the risks that AmGuard deemed commensurate with insuring a single business entity." (Marcincavage Decl. ¶ 6.) This is not inconsistent with a family restaurant business operating multiple restaurants, as did the Shou siblings at the three locations listed on the original policy. In any event, AmGuard must show more than "a mere scintilla of evidence . . . to defeat [the Plaintiffs'] motion for summary judgment." *Kesinger ex rel. Est. of Kesinger v. Herrington*, 381 F.3d 1243, 1249–50 (11th Cir. 2004) (citation omitted).

Here, AmGuard does not cite to any other evidence in the record to support its proposition, nor does the Declaration of Al Marcincavage. Such "conclusory allegations without specific supporting facts have no probative value" at the summary judgment stage. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986–87 (11th Cir. 1985) (citation omitted). Accordingly, AmGuard has not created a genuine dispute of material fact in proffering the Marcincavage Declaration, and the Court finds no prejudice in the Plaintiffs' proposed reformation under the circumstances. AmGuard accepted premium payments from Shou & Shou in exchange for coverage under the Policy, and thus,

---

R&R and seller Irish Bred Pub & Grill V, Inc. in *Occidental* who had no preexisting relationship. The Court finds this factual distinction immaterial considering its conclusion that the Shous and AmGuard intended for the Policy to cover Shou & Shou and Noodle Life.

AmGuard would be entitled to a windfall absent reformation. Having found that the Shous and AmGuard intended for the Policy to cover Shou & Shou as an insured rather than Noodle, Inc., and having found no prejudice to AmGuard, the Court finds in favor of the Plaintiffs on Count I of the Amended Complaint and orders reformation of the Policy accordingly.

### B. Breach of Contract

Under Georgia law, "[a] suit for reformation and damages for breach of the reformed contract constitutes only one claim for relief." *Wall*, 242 Ga. at 177 (citation omitted). Having reformed the Policy to cover Shou & Shou as an insured, the Court finds that the Plaintiffs, as judgment creditors and assignees of Shou & Shou, now have standing to pursue their claim for breach of contract against AmGuard. *See State Farm Fire & Cas. Co. v. Bauman*, 313 Ga. App. 771, 771 (2012) ("The general rule is that, where an injured party obtains an unsatisfied judgment against a party who has insurance covering the injuries—so that the judgment fixes the liability of the insured party to the injured party—the injured party may bring an action directly against the insurer to satisfy the judgment from the available insurance proceeds." (citation omitted)).

The Court finds that AmGuard breached its obligations under Section II.A.1 of the Policy's Business Liability Coverages by refusing coverage and a defense to Shou & Shou. (*See* Def.'s Answer to Am. Compl., Ex. A, at 87.) Having improperly denied coverage and a defense to Shou & Shou, AmGuard

is liable to the Plaintiffs for their settlement amount within the Policy's $1 million per occurrence limit for Liability and Medical Expenses:

> In Georgia, an insurer that denies coverage and refuses to defend an action against its insured, when it could have done so with a reservation of its rights as to coverage, waives the provisions of the policy against a settlement by the insured and becomes bound to pay the amount of any settlement within a policy's limits made in good faith, plus expenses and attorneys' fees.

*S. Guar. Ins. Co. v. Dowse*, 278 Ga. 674, 676 (2004) (quotation marks, brackets, and citations omitted); (Def.'s Answer to Am. Compl., Ex. A, at 9.) Accordingly, the Court finds in favor of the Plaintiffs on Count II of the Amended Complaint and orders that the Plaintiffs are entitled to a judgment in the amount of $900,000.000 for Mrs. Lowery and $100,000.00 for Mr. Lowery, plus expenses and attorneys' fees. *See Dowse*, 278 Ga. at 676. The Court also finds that the Plaintiffs are entitled to post-judgment interest on their consent judgment. *See Occidental*, 339 Ga. App. at 430–31. AmGuard has not disputed the post-judgment interest calculation method proposed by the Plaintiffs. (*See* Def.'s Br. in Opp'n to Pls.' Mot. for Partial Summ. J., at 22–23.) Thus, the Court finds that as of September 14, 2022, the Plaintiffs are entitled to a post-judgment interest award amount of $136,986.30 ($171.23 per day over 800 days). (*See* Pls.' Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 18–20.)

## C. Bad Faith

Having reformed the Policy to include Shou & Shou as an insured and having found AmGuard in breach of its contractual obligations under the

Policy, the Court turns to the issue of AmGuard's alleged bad faith. AmGuard argues that it is entitled to summary judgment on the Plaintiffs' bad faith claim because the evidence shows a plainly reasonable basis for AmGuard's denial of coverage to Shou & Shou. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 22–23.) The Plaintiffs contend in response that a jury should decide whether AmGuard's basis for denying coverage was reasonable. (Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J., at 14.)

Under Georgia law, insureds can bring claims against their insurers for refusal to compensate covered losses if that refusal was the product of bad faith. O.C.G.A. § 33-4-6. Bad faith for purposes of § 33-4-6 is "*any frivolous and unfounded refusal in law or in fact* to pay according to the terms of the policy." *Amica Mut. Ins. Co. v. Sanders*, 335 Ga. App. 245, 250 (2015) (citation omitted). Usually, the issue of bad faith is an inquiry for the jury, "but when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties." *Id.*; *see also Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 731 (2010) ("Penalties for bad faith are not authorized . . . where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact."). Nonetheless, the Georgia Court of Appeals has held the following on the issue of bad faith:

> Furthermore, "it is the very fact that certain factual issues regarding the merits of a claim are in genuine conflict that causes there to be no conflict, as a matter of law, whether an insurance

25

company had reasonable grounds to contest a particular claim. *In reaching this determination a court should carefully scrutinize any claim of a contest in facts to preclude the reliance by an insurance company on fanciful allegations of factual conflict to delay or avoid legitimate claims payment.*"

*Cincinnati Ins. Co. v. Kastner*, 233 Ga. App. 594, 596 (1998) (citation omitted).

Considering the issues presented here, the Court cannot conclude as a matter of law that AmGuard's denial of coverage to Shou & Shou was reasonable. The Court found no genuine dispute of material fact in ordering equitable reformation above, and such a determination does not foreclose a finding of "fanciful allegations of factual conflict to . . . avoid legitimate claims payment." *Kastner*, 233 Ga. App. at 596. Thus, the issue of bad faith in this case is one appropriate for resolution by a jury. *See St. Paul Fire & Marine Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (1987). Accordingly, AmGuard is not entitled to summary judgment on the Plaintiffs' bad faith claim.

### D.  Defendant AmGuard's Counterclaim: Declaratory Judgment

Having reformed the Policy to include Shou & Shou as an insured, AmGuard's Counterclaim for a declaratory judgment necessarily fails. Thus, the Plaintiffs are entitled to summary judgment on AmGuard's Counterclaim.

### IV.    Conclusion

In brief, the Court finds no genuine issue of material fact exists as to Counts I and II of the Amended Complaint and as to Defendant AmGuard's Counterclaim, and therefore, the Plaintiffs are entitled to summary judgment

on their equitable reformation and breach of contract claims and on AmGuard's Counterclaim for a declaratory judgment. For the foregoing reasons, the Plaintiffs' Motion for Partial Summary Judgment [Doc. 82] is GRANTED, and the Defendant's Motion for Summary Judgment [Doc. 83] is DENIED. The Clerk is DIRECTED to enter judgment in favor of the Plaintiffs on Counts I and II of the Amended Complaint [Doc. 25] and to enter judgment in favor of the Plaintiffs on the Defendant's Counterclaim [Doc. 27].

SO ORDERED, this ___14th___ day of September, 2022.


THOMAS W. THRASH, JR.
United States District Judge

27